# C. NOTLEY AND SONS *v.* THE KUKAIAU PLANTA-. TION COMPANY, a Corporation.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 30, 1898.        DECIDED OCTOBER 10, 1898.

### JUDD, C.J., FREAR AND WHITING, JJ.

Exceptions can be taken from an opinion of a circuit judge in a jury waived case.

The land demised was described as follows: "All that parcel of land situate in Hamakua, Hawaii, H. I., being 840 acres, more or less, (the amount to be ascertained by actual survey) and being the makai portion of the Ahupuaa of Kukaiau, being that portion of the said land suitable for the cultivation of sugar cane, and being bounded on the north by the ocean, on the east by a deep·gulch, on the west by a deep gulch, and on the south by the northern line of a two hundred acre tract under contract of lease to be made in December, A. D. 1883, between the said party of the first part and the said party of the second part, together with all the appurtenances appertaining thereto."

*Held:* the boundaries of the land demised are sufficiently certain and definite and include all the land within the bounds. The evidence that portions of it are not "suitable for the cultivation of sugar cane," does not show a latent ambiguity.

*Held:* a description "bounded by a deep gulch" means to the bottom or middle of the gulch, the lessor owning to the middle.

### OPINION OF THE COURT BY JUDD, C.J.

This is an action of debt for rent alleged to be due. The case was heard, jury waived, by Judge Perry of the Circuit Court, First Circuit, who rendered his decision in favor of the

plaintiffs on the 12th of March, 1898. The case comes to this court on defendant's bill of exceptions, which counsel for plaintiff moved to dismiss on the ground that "exceptions" do not lie from a decision of a Circuit Court in a jury waived case, but that an "appeal" only lies.

Section 1438 of the Civil Laws is ample authority for allowing "exceptions" to be taken from an opinion of a circuit judge in a case heard by him, the jury being waived. Whether under Section 1339 of the Compiled Laws an "appeal" could have been taken it is unnecessary now to decide because the last legislature repealed the said section and the question cannot again arise.

We copy the statement of the case from the decision excepted to:

"In this case the plaintiffs claim of the defendant the sum of $4405.00 being money alleged to be due for rent for the year ending November 1, 1897, of certain premises described in a certain lease made by plaintiffs to J. M. Horner & Sons, and by said lessees assigned to the defendant. Defendant admits that there is due and owing from it to the plaintiffs the sum of $4055.50 as such rent, has tendered said sum to the plaintiffs and, upon plaintiffs' refusal to accept the same, has paid it into court; but the defendant denies any liability to pay the balance claimed in this action. In the lease, the rent reserved is stated to be a certain sum, to wit, five dollars per acre, the area of the demised land "to be ascertained by actual survey," and the dispute between the parties as to the rent payable consists in the fact that they do not now agree as to what are the boundaries of said land and, consequently, as to what is its area.

"The lease declared on was executed May 1st, 1883, and is for a term of 25 years from that date, with privilege of renewal. The land demised is therein described as follows: 'All that parcel of land situate in Hamakua, Hawaii, H. I., being eight hundred and forty acres more or less (the amount to be ascertained by actual survey) and being the makai portion of the Ahupuaa

of Kukaiau being that portion of the said land suitable for the cultivation of sugar-cane and being bounded on the north by the ocean, on the east by a deep gulch, on the west by a deep gulch and on the south by the northern line of a two hundred acre tract under contract of lease to be made in December, A. D. 1883, between the said party of the first part and said party of the second part, together with all the appurtenances appertaining thereto.' The Royal Patent of Kukaiau shows that this ahupuaa extends on the north to the seashore, and that on its sides, extending mauka and makai, the boundaries run along the middle of the deep gulches above referred to. Undisputed evidence shows that at the north end there is a high bluff stretching across the entire width of the ahupuaa, and that the area of the land lying between the upper edge of this bluff and the sea is 11 acres; also that the area of the sides of the two deep gulches as far south as the southerly line of the piece of land in question, i. e., between the middle of each gulch and its inner and upper edge, is 59 acres, and that the land included within this total of 70 acres is not "suitable for the cultivation of sugar-cane;" that the total area of the land leased, if it includes these 70 acres, is 881.1 acres, or 811.1 acres if it does not include these 70 acres, The question in this case is whether the description in the lease declared on includes the sides of the gulches and the bluff near the sea or not.

"This lease was made in pursuance of the terms of a written instrument entered into September 13, 1882, by Charles Notley and the original lessees, wherein it was agreed to lease 'the makai portion of the Ahupuaa of Kukaiau being that portion of said land suitable for the cultivation of sugar, such quantity not to be less than 800 acres and not to exceed 2000 acres.'

"A few months after the execution of this agreement, to wit, on December 1, 1882, the same parties entered into another agreement to lease, at a yearly rental of three dollars per acre, 'two hundred acres of land upon the Ahupuaa of Kukaiau * * * the upper boundary of such land to be 'the edge of the woods' or Akulea being the point at which fern commences

to grow amongst the timber, the line crossing the ahupuaa E. 80 S. and the upper side of such two hundred acres to be the full width of the ahupuaa;' and on the first day of December, 1883, a lease was accordingly executed containing the following description: 'All that parcel of land situate in Hamakua, Hawaii, H. I., containing two hundred acres upon the Ahupuaa of Kukaiau and being bounded on the north by the southern line of a parcel of land leased by the said party of the first part to the said party of the second part on the first day of May, 1883, on the east by a deep gulch, on the west by a deep gulch and on the south by the forest.' "

It seems to us that the conclusion put upon the lease by the lower court was correct, that the demised premises included the sides of the gulches. The boundaries are certain, "on the north by the ocean, on the east by a deep gulch, on the west by a deep gulch and on the south by the northern line of a two hundred acre tract under contract of lease to be made in December, A. D. 1883" between the parties. The exact location of this southern boundary is not disputed, the lease of December, 1883, having been made. It is claimed by defendant that this general statement of boundaries should be modified and the area reduced by a part of the description, being that portion of the said land *"suitable for the cultivation of sugar-cane."* It seems to be conceded that the sides of the gulches referred to as well as the bluff at the northern or ocean side are "not suitable for the cultivation of sugar-cane."

The description in the lease called for the "makai portion of the Ahupuaa of Kukaiau." The plaintiff (lessor) owned to the middle of the gulches; his grant from the government so described the land of Kukaiau. Should not the land leased be held to run as far as the middle of the gulches and include the sides of the gulches? The northern boundary runs to the ocean; this admits of no ambiguity and the bluff is included. Where a boundary line is simply by an object, natural or artificial, which has width, as a non-navigable stream, (or better, a private and not public stream) a way, ditch, wall, &c., then

the center is the boundary. In the nature of things, however, if the land be bounded by a "house," a "wood," a "railroad," or another's parcel of land, the line does not go through the center of such objects, as no one would suppose that the demise or grant should carry with it the half of a "house," &c., which the lessee or grantee could not make any beneficial use of. In the case of a railroad cut, 19 So. R. 19, the easement to the railroad of the sides of the cut would not allow the general principle to apply and it is an exception. If the grantor or lessor owns the land to the center of the way, wall, stream, ditch, &c., there would be no sense in his granting or leasing to the inner edge of the same, retaining to himself the space between. In most cases this would be of no benefit to him. Each case must be considered by itself. In the case of a gulch, the land intervening between the top and the bottom or center of the gulch, may or may not be useful to the lessor, but valuable or not, the presumption that the bottom of the gulch, it being owned by the lessor, was the boundary, would still prevail. If it was the intention of the parties to limit the acreage of the land leased to that part "suitable for the cultivation of sugar-cane," it should have been so expressed. It is true the makai portion of the Ahupuaa of Kukaiau was "suitable for the cultivation of cane," but not every acre or square foot of it. It was a general description. If the arm of the eastern gulch running into the body of the cane land, the rocky and almost perpendicular bluff and the steep sides of the two gulches forming the eastern and western boundaries were not suitable for such cultivation, they were within the description of the land leased and passed to the lessee. The principle of interpretation is that if there be a description of the property clear and definite, and sufficient to render certain what is intended to be demised, the addition of a wrong name, or of an erroneous statement as to quantity, occupancy, locality or an erroneous enumeration of particulars will have no effect. That there was such a definite and certain description is clear, and it must prevail.

We find no latent ambiguity in the description of the land

demised.    The evidence offered or rejected all appears to be parol evidence, whether by written documents or oral.    No ambiguity appears on the face of the indenture of lease.    It is only by extrinsic proof of the fact that some of the land is not suitable for the cultivation of sugar-cane, that an ambiguity could possibly arise.    But we think that the lessor only intended this part of the description to indicate the general character of the makai part of the ahupuaa as suitable for cane to distinguish it from forest land, and there was no ambiguity.    We therefore deem it unnecessary to go into the question of the admissibility of certain parol evidence allowed by the court or whether other evidence offered was improperly disallowed.

The exceptions are overruled.

*A. S. Hartwell* for plaintiffs.
*Kinney & Ballou* for defendant.